**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Eugene DiFRANCESCO,**
**Defendant-Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Eugene DiFRANCESCO,**
**Defendant-Appellee.**

Nos. 231, 908 and 1094, Dockets 78–1250, 78–1369 and 78–1371.

United States Court of Appeals, Second Circuit.

Aug. 12, 1981.

**34**

Richard J. Arcara, U.S. Atty., W.D.N.Y., Buffalo, N.Y. (Jerome M. Feit, Victor D. Stone, Attys., Dept. of Justice, Washington, D.C., of counsel), for plaintiff-appellant United States.

Boreanaz, NeMoyer & Baker, Buffalo, N.Y., for defendant-appellee Eugene Di-Francesco.

Before Van GRAAFEILAND,* and MES-KILL, Circuit Judges, and HAIGHT,** District Judge.

MESKILL, Circuit Judge:

This case is before us on remand from the Supreme Court. *United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), *rev'g* 604 F.2d 769 (2d Cir. 1979). In our original decision, familiarity with which is assumed, we held that 18 U.S.C. § 3576 (1976), which allows the Government under certain conditions to appeal a sentence imposed upon a "dangerous special offender," as defined in 18 U.S.C. § 3575, violated the Double Jeopardy Clause

of the Fifth Amendment. The Supreme Court reversed, holding that nothing in the Constitution forbids appellate review of a sentence under section 3576. The question now before us is whether the sentence imposed upon DiFrancesco under the enhancement provisions of section 3575 can stand. Because the sentence imposed was inconsistent with the sentencing court's finding of "dangerousness," we remand for resentencing.

## BACKGROUND

The facts are set forth in our original opinion and need not be fully recounted here. In April 1976, DiFrancesco was indicted for conducting and conspiring to conduct through a pattern of racketeering an arson-for-hire business in the Rochester, New York, area, in violation of 18 U.S.C. § 1962 (1976). Prior to trial, the Government filed a notice contending that DiFrancesco qualified as a "dangerous special offender" under 18 U.S.C. § 3575 and recommending that pursuant to subsection (b) of that statute he be considered for a special five-year enhancement of the twenty-year sentence otherwise provided for each violation of section 1962.[1] *See* 18 U.S.C. § 1963(a) (1976). On October 31, 1977, DiFrancesco was convicted in a jury trial before Judge Burke on both counts. He was not immediately sentenced. Shortly thereafter, on January 26, 1978, DiFrancesco was convicted in a jury trial before Judge Pratt of various crimes surrounding the Columbus Day bombing of the Federal Building in Rochester.[2] Judge Pratt sentenced DiFrancesco to a total of nine years for his involvement in the bombing.

---

\* Pursuant to Local Rule § 0.14(b), the Honorable Ellsworth A. Van Graafeiland was designated to sit in the place of the Honorable J. Joseph Smith, who died on February 16, 1980.

\*\* Honorable Charles S. Haight, United States District Judge for the Southern District of New York, sitting by designation.

1. Under subsection (b), the enhanced sentence imposed upon a dangerous special offender may not exceed 25 years and may not be disproportionate to the maximum term otherwise authorized for the underlying crime or crimes. Since the underlying crimes in this case carried twenty-year sentences, the maximum enhancement available under the statute was five years.

2. The crimes included wilfully damaging federal property, 18 U.S.C. § 1361 (1976), unlawfully storing explosives, 18 U.S.C. § 842 (1976), and conspiring to commit these acts, 18 U.S.C. § 371 (1976).

Subsequently, on April 7, 1978, Judge Burke conducted a special sentencing hearing in connection with the Government's petition for enhanced punishment. Two weeks later, the court issued findings of fact, see 18 U.S.C. § 3575(b) (1976), and concluded that DiFrancesco was a dangerous special offender. Specifically, the court found that DiFrancesco qualified as a "special" offender under 18 U.S.C. § 3575(e)(3) (1976)[3] since he was the "captain" of a substantial arson-for-hire ring which "maintained formal membership, various ranks and a chain of command, and required the formal initiation of its members." In finding DiFrancesco to be "dangerous" within the meaning of 18 U.S.C. § 3575(f) (1976),[4] Judge Burke stated:

> This criminal history, based upon proven facts, reveals a pattern of habitual and knowing criminal conduct of the most violent and dangerous nature against the lives and property of the citizens of this community. It further shows the defendant's complete and utter disregard for the public safety. The defendant, by virtue of his own criminal record, has shown himself to be a hardened habitual criminal from whom the public must be protected for as long a period as possible. Only in that way can the public be protected from further violent and dangerous criminal conduct by the defendant, Eugene DiFrancesco.

One week later, on April 28, 1978, the court sentenced the defendant as a dangerous special offender to two concurrent ten-year terms of imprisonment, to be served concurrently with the nine-year term imposed by Judge Pratt for the bombing conviction. Thus, in effect, DiFrancesco received only a one-year prison term for his involvement in the arson ring, even though the maximum term under the statute is 20 years for each count. The Government appealed pursuant to 18 U.S.C. § 3576 (1976), arguing that the court abused its discretion in imposing such a lenient sentence after finding the defendant to be a dangerous special offender.

### DISCUSSION

There can be little dispute that DiFrancesco is a "special" offender under section 3575(e)(3). The district court's findings, which have not been shown to be clearly erroneous, show that DiFrancesco "did ... initiate, organize, plan, finance, direct, manage, or supervise all or part" of a felonious "conspiracy with three or more other persons to engage in a pattern of conduct criminal under applicable laws." Id. Rather, the controversy surrounds the court's finding of "dangerousness" and the sentence imposed pursuant thereto. The Government argues that, in view of Judge Burke's findings, "the sentence ... actually imposed here—adding but one year to the defendant's nine-year term of imprisonment imposed [for the bombing]—is not at all a product of its factual findings and ... constituted an abuse of that court's discretion."

Section 3575(f) provides that "[a] defendant is dangerous for purposes of this section if a period of confinement longer than that provided for such felony is required for the protection of the public from further criminal conduct by the defendant." The Government concedes that, "at first blush," the finding of dangerousness together with the mandatory language of subsection (b), "would seem to have required that the court sentence petitioner to a term longer than that provided for the underlying violation—i. e. twenty years." The Government contends, however, that such an interpretation is incorrect, "since in the very next

---

**3.** Section 3575(e)(3) provides that a defendant is a special offender if:

> such felony was, or the defendant committed such felony in furtherance of, a conspiracy with three or more other persons to engage in a pattern of conduct criminal under applicable laws of any jurisdiction, and the defendant did, or agreed that he would, initiate, organize, plan, finance, direct, manage, or supervise all or part of such conspiracy or conduct, or give or receive a bribe or use force as all or part of such conduct.

**4.** Section 3575(f) provides:

> A defendant is dangerous for purposes of this section if a period of confinement longer than that provided for such felony is required for the protection of the public from further criminal conduct by the defendant.

subsection of the Act Congress stated that it was not 'creating any mandatory minimum penalty.' "

 We cannot agree with the Government that a sentence of less than the authorized penalty may be consistent with a finding of dangerousness. The language, judicial interpretations, and legislative history lead us to an opposite conclusion. By the very language of subsection (f), for DiFrancesco to have qualified as "dangerous," the sentencing court must have concluded that the protection of the public required his incarceration for more than twenty years. The cases support this interpretation. *See United States v. Warme*, 572 F.2d 57, 62 (2d Cir.), *cert. denied*, 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 393 (1978) (sentencing court entitled to rely on variety of evidence in concluding that " 'protection of the public' required [defendant's] confinement for a period 'longer than provided for [the] felony.' "); *United States v. Neary*, 552 F.2d 1184, 1193–94 (7th Cir.), *cert. denied*, 434 U.S. 864, 98 S.Ct. 197, 54 L.Ed.2d 139 (1977) (purpose of dangerousness inquiry "is to determine whether and to what extent a sentence in excess of the maximum for the particular offense is appropriate"); *United States v. Williamson*, 567 F.2d 610, 616 (5th Cir. 1977) ("Congress intended to provide the public with protection from repeat offenders by enhancing the incarceration the offender faced for any one crime."). The legislative history also militates against the Government's reading of subsection (d). The Attorney General, testifying before the subcommittee of the House Committee on the Judiciary (Subcommittee) which was considering the Act, stated:

> [P]rior to imposing a special sentence, a court must find: that the defendant is "dangerous" *in the sense that a longer term than the maximum which otherwise may be imposed for the felony for which he has been convicted is necessary for the public's protection*; and that the defendant comes within one of the [specified] categories of special adult offenders. . . .

Hearings Before Subcommittee No. 5 of the Committee on the Judiciary, House of Representatives, 91st Cong., 2d Sess. 172 (1970) (Statement of the Department of Justice (emphasis added)) [hereinafter cited as *1970 Hearings*]. The members of the House Subcommittee evidently agreed with the Attorney General's interpretation. At the hearings, Congressman Railsback posed the following question concerning seemingly inconsistent provisions in section 3575:

> You have a provision, subsection (f), which states that "a defendant is dangerous for purposes of this section if a period of confinement longer than that provided for such felony is required for the protection of the public from further criminal conduct by the defendant."
>
> However, subsection (d) says that the defendant must be sentenced to at least the minimum provided for the "trigger" felony offense.
>
> In other words, in one case it says that *to find the defendant "dangerous" he has to require a period of confinement longer than the maximum provided for the felony*. Then it says that the judge must sentence him to at least the minimum provided for the felony—*an unnecessary requirement in view of the determination that the maximum is too little.*

*1970 Hearings, supra*, 91st Cong., 2d Sess. 190 (emphasis added). In a letter response, Assistant Attorney General Will Wilson explained that the purpose of subsection (d) was simply to emphasize that nothing in the Special Dangerous Offender statute was intended to abrogate an otherwise applicable mandatory minimum penalty. In response to the perceived inconsistency, he stated, "It would, of course, be logically inconsistent for a court after making a finding that the defendant was 'dangerous' under [subsection (f)], to thereupon sentence him to a term of imprisonment less than the mandatory minimum which the law prescribes for the felony offense." *1970 Hearings, supra*, 91st Cong., 2d Sess. 608, *reprinted in* [1970] U.S.Code Cong. & Ad.News at 4059. At another point, Mr. Wilson explained, "If a court finds that the usual maximum term for the felony, or any lesser term, is all that should be imposed, *by definition the court*

*could not find the defendant to be a dangerous special offender." 1970 Hearings, supra,* 91st Cong., 2d Sess. 677, *reprinted in* [1970] U.S.Code Cong. & Ad.News 4065–66 (emphasis added).

The Government's argument that such an interpretation would impose an impermissible mandatory minimum penalty reflects a misunderstanding of the history and purpose of subsection (d). Subsection (d) of S.30, the bill passed by the Senate and considered by the Subcommittee, stated simply that "[n]otwithstanding any other provision of this section, the court shall not sentence a dangerous special offender to less than any mandatory minimum penalty prescribed by law for such felony." *1970 Hearings, supra,* 91st Cong., 2d Sess. 70. As was discussed earlier, *see* p. 6, *supra,* some Subcommittee members were uncertain about the purpose of subsection (d). In response, Mr. Wilson wrote:

Subsection (d) must be read in the context of the section as a whole, including the preceding subsections which provide:

(b) . . . . If it appears by a preponderance of the information . . . that the defendant is a dangerous special offender, the court shall sentence the defendant to imprisonment for a term not to exceed thirty years [later changed to twenty-five]. Otherwise it shall sentence the defendant in accordance with the law prescribing penalties for such felony.

(c) This section shall not prevent the imposition and execution of a sentence to death or of imprisonment for life or for a term exceeding thirty years upon any person convicted of an offense so punishable.

When read in this context, it is apparent that subsection (d) is intended simply to emphasize that nothing in the section is to be construed in any way to abrogate any otherwise applicable minimum penalty.

*1970 Hearings, supra,* 91st Cong., 2d Sess. 609, *reprinted in* [1970] U.S.Code Cong. & Ad.News at 4059. Thus, as originally drafted subsection (d) was a logical extension of subsections (b) and (c), all of which were intended to emphasize that section 3575 was not intended to interfere with or displace otherwise available penalties.

■ The second sentence of subsection (d) was the result of entirely different considerations. During the Subcommittee hearings considering S.30, the American Bar Association proposed a number of modifications to bring the bill in line with the ABA Standards for the Administration of Criminal Justice.[5] Among their suggestions was the following proposal: .

Section 3575, subsection (b) contains an ambiguity which we feel should be clarified to make it consistent with the Standards. This occurs in the use of the word "shall" in subsection (b) which states " . . . If it appears . . . that the defendant is a dangerous special offender, the court *shall* sentence the defendant to imprisonment for a term not to exceed thirty years . . ."

The approved Standards relating to Sentencing Alternatives and Procedures provide in 2.1(c) "The legislature should not specify a mandatory (underscoring supplied) sentence for any sentencing category or for any particular offense." It is possible that the draftsmen of this subsection may not have intended "shall" as mandatory, but to eliminate any confusion, we suggest "shall" be changed to "may."

*1970 Hearings, supra,* 91st Cong., 2d Sess. 545 (Statement of Edward Wright, President-Elect, American Bar Association). The Justice Department opposed this suggestion, arguing that the proposed change would be inconsistent with subsection (f):

The ABA recommends that subsection (b) . . . be amended to substitute the word "may" for "shall." It was suggest-

---

5. *See 1970 Hearings, supra,* 95 Cong., 2d Sess. 544–47 (Statement of Edward Wright, President-Elect, American Bar Ass'n.). Among the suggestions which were adopted were reduc-

tion of the ceiling from 30 to 25 years, inclusion of a proportionality limitation, and modification of the definition of "special offenders." *Id.*

ed that a range of possible terms of imprisonment should be provided, but that the bill as drafted might be construed to make mandatory at least a minimum prison sentence . . . .

We think that the term "shall" as used here is appropriate. It conforms with the language generally used in the sentencing provisions of Title 18, which has not previously been misconstrued as providing for a mandatory minimum sentence. Furthermore, inasmuch as an offender in any of the three defined categories is to be considered "dangerous" only when the court finds that a longer prison term than that which may be imposed for the felony of which he has been convicted is required to protect the public from further criminal conduct on his part, it would be incongruous for the court to fail to sentence a "dangerous" offender to any prison term at all. Therefore a provision that some such term of imprisonment "shall" be imposed is appropriate for the purposes of the Title. If a court finds that the usual maximum term for the felony, or any lesser term, is all that should be imposed, by definition the court could not find the defendant to be a dangerous special offender.

*1970 Hearings, supra,* 91st Cong., 2d Sess. 677, *reprinted in* [1970] U.S.Code Cong. & Ad.News at 4065–66 (Letter of Will Wilson, Assistant Attorney General, to Chairman of Subcommittee No. 5, House Committee on the Judiciary). The Subcommittee evidently agreed with the Justice Department's interpretation, since the mandatory language of subsection (b) was not changed. However, apparently in an effort to emphasize that section 3575 did not in itself im-

pose any mandatory minimum sentence, the Subcommittee amended subsection (d) by adding the following sentence: "This section shall not be construed as creating any mandatory minimum penalty." Thus, far from being designed to contradict the plain meaning of subsection (f)—a result which would necessarily follow from the Government's reading—subsection (d) was intended to stress that section 3575 is an option available to the sentencing judge and is not in itself a mandatory minimum penalty imposed on all persons qualifying as special offenders under subsection (e).[6] But once a court has determined that a defendant is *dangerous,* that court necessarily has concluded that the maximum confinement otherwise provided for the underlying crime or crimes is not sufficient. Absent such a finding, the court would have no reason to resort to the enhancement provisions of the statute in the first place.

■ Because it is clear that Judge Burke's finding of "dangerousness" and the resulting sentence were inconsistent, the defendant must be resentenced.[7] Section 3576 provides that on review of a sentence imposed upon a dangerous special offender an appellate court may "affirm the sentence, impose or direct the imposition of any sentence which the sentencing court could originally have imposed, or remand for further sentencing proceedings and imposition of sentence." Because of Judge Burke's death, we think it best to remand the case to another district court judge to be designated by Chief Judge Curtin of the Western District of New York, who may conduct such further sentencing proceedings as he finds necessary. It is so ordered.

---

6. Indeed, the Senate did not consider the House amendments to be significant enough to warrant a conference. Senator McClellan, the principal sponsor of S.30, stated that "the force and efficacy of the Senate measure is substantially retained." 116 Cong.Rec. S36,293 (Oct. 12, 1970) (Remarks of Sen. McClellan). Senator Hruska, also a leading proponent of the bill, stated that "the changes were not of major significance." *Id.* (Remarks of Sen. Hruska). The amendments were approved by motion from the floor. *Id.* at S36,296.

7. In our original DiFrancesco opinion, Judge Haight argued that § 3575 was inapplicable because DiFrancesco was already subject, by means of consecutive sentencing, to a total sentence of forty years. The majority rejected that argument, concluding that "the application of § 3575 depends on a particularized determination with regard to each of the felonies for which dangerous special offender sentencing is sought." 604 F.2d at 780–81 n.13. We adhere to that position in this opinion.

HAIGHT, District Judge (dissenting):

I dissent from Judge Meskill's careful analysis only because of my view, previously expressed (604 F.2d at 787–89) that §§ 3575 and 3576 are not applicable to Di-Francesco.