UNITED STATES of America, Plaintiff,

v.

**Carlos Antonio PAVON, Defendant.**

**No. 85–339–Cr–SPELLMAN.**

United States District Court,
S.D. Florida,
Miami Division.

Sept. 30, 1985.

Roy J. Kahn, Asst. U.S. Atty., Miami, Fla., for plaintiff.

Michael W. Burnbaum, Miami, Fla., for defendant.

MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR NEW TRIAL AND HEARING TO DETERMINE JUROR MISCONDUCT

SPELLMAN, District Judge.

This CAUSE comes before the Court on the Defendant's Motion for a New Trial, or alternatively, for a hearing to determine the existence of jury misconduct in the proceedings. The Defendant states that on August 15, 1985, after the verdict was entered, the foreperson of the jury made certain unsettling remarks to the Defense Counsel. She indicated that the reason for the conviction of the Defendant was the fact that he failed to take the stand in his own defense. The attorney proffered these remarks to the Court just prior to a hearing on release pending sentencing pursuant to 18 U.S.C. § 3143(a). The Defendant emphasizes the fact that the Court instructed the jury on at least three occasions not to even discuss or consider the Defendant's choice not to testify in the trial. According to the Defendant, such consideration, contrary to law and to the specific instructions, warrants the granting of a new trial, or at the very least, an investigation into the possibility of jury misconduct. For the following reasons, said Motion must be DENIED.

## II

██ The Defendant asserts that conducting an investigation into jury misconduct lies within the discretion of the trial judge. To suggest, however, that such discretion is limitless is to ignore a respected precept dating from Lord Mansfield's time—jurors may not impeach their own verdict.[1] A jury has the obligation to follow the law and abide by the court's instructions, but once that verdict is rendered, the court may not inquire into the jury's deliberative process.

The case most frequently cited for this proposition, *McDonald v. Pless*, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915), elucidates the values sought to be promoted by such limitations on investigations into the jury's mental process. In *McDonald*, attorneys brought suit to recover an amount alleged to be due them for legal services. The Defendant moved to set aside the verdict on the ground that when the jury retired, the Foreman suggested that each juror write down an appropriate amount, that they divide the aggregate of these amounts by twelve, and that they return to the court a quotient verdict. The courts below refused to permit the jurors to testify on the grounds that they are incompetent to impeach their own verdict. The United States Supreme Court affirmed, and discussed the considerations of public policy behind the shroud of secrecy surrounding the deliberative process. Whenever a party seeks to use jury misconduct as the basis of a Motion for a New Trial, the court faces a choice: it may right the wrong of the single litigant or inflict an injury on the public at large. The Court in *McDonald* elaborated on the consequences of investigations into verdicts:

> But let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed

by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation the constant subject of public investigation—to the destruction of all frankness and freedom of discussion and conference. *Id.* at 267–68, 35 S.Ct. at 784.

In sum, the ostensible harshness of this rule is mitigated by significant values: the freedom of deliberation, the finality of verdicts, and the protection of jurors. A consequence of this ban on probing the mental process of the jury is that some convictions must stand despite suspicions or even clear indications of misconduct. *See United States v. D'Angelo*, 598 F.2d 1002, 1004 (5th Cir.1979).

██ Our law has also accommodated countervailing interests in justice and regularity in the jury process. The rule allows for an exception in the case of extraneous prejudicial information or in instances where outside influences are brought to bear upon a juror. In *Mattox v. United States*, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892), the Defendant was found guilty and sentenced to death. After the jury had retired and before they had agreed on their verdict, a newspaper was introduced into the jury room, the tendency of which was injurious to the accused. The Defense Counsel offered affidavits of the jurors of this fact in support of a Motion for a New Trial and the court rejected them. The United States Supreme Court in finding reversible error, stated:

> [O]n a motion for a new trial on the ground of bias on the part of one of the jurors, the evidence of jurors as to the motives and influences which affected their deliberations, is inadmissible either

---

**1.** Prior to 1785, a juror's testimony was sometimes received. In *Vaise v. Delaval*, 1 T.R. 11, Lord Mansfield would not permit the introduc-

tion of an affidavit of jurors to demonstrate that the verdict had been made by lot.

to impeach or to support the verdict. But a juryman may testify to any facts bearing upon the question of the existence of any extraneous influence, although not as to how far that influence operated upon his mind. *Id.* at 149 [13 S.Ct. at 53]. *See also Stimack v. Texas,* 548 F.2d 588 (5th Cir.1977); *United States v. Howard,* 506 F.2d 865, 868 (5th Cir.1975).

This exception for extraneous prejudicial information and outside influences is likewise embodied in the Federal Rules of Evidence.[2]

### III

■ The misconduct alleged in the instant case does not fall within the ambit of either exception. The Defendant is not contending that extraneous information was brought to the jury's attention. The Defendant is not claiming that outside influence was improperly brought to bear upon any juror. The Defendant does not suggest that through the media injurious information crept into the jury room. *Mattox v. United States,* 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892). Nor does the Defendant assert that jurors received threats to themselves or their families. *Stimack v. Texas,* 548 F.2d 588 (5th Cir. 1977). Instead, the Defendant advances as a reason for a new trial or an inquiry into juror misconduct the possibility that the jury had considered as a basis for conviction the Defendant's failure to testify. Were this Court to make such a determination, it would be forced to conduct a post-verdict fishing expedition into the mental process behind the finders of fact. Resolving the question of whether the jurors improperly disregarded the Court's instruc-tions inevitably entails an anatomization of the thought behind the verdict.

This Court's refusal to investigate the Defendant's contention that the jurors held it against the accused that he failed to take the stand in his own defense is not anomalous. In *Davis v. United States,* 47 F.2d 1071 (5th Cir.1931), the court upheld a conviction despite the post-trial testimony of jurors that the jury had considered the Defendant's failure to take the stand as evidence of guilt and that the jurors disregarded the court's instructions not to consider such a failure to testify.[3] In *United States v. DiCarlo,* 575 F.2d 952, 960 (1st Cir.1978), the court found that the Defendant's claim to a new trial based upon the juror's consideration of the defendant's failure to take the stand "flies in the face of the familiar principle that a verdict may not be impeached by a juror's testimony." In sum, this Court's unwillingness to inject itself into the ratiocinations of the finders of fact complies with sound policy and accepted principles.

### IV

This Court also wishes to address the two cases the Defendant cites in support of its Motion for a New Trial. The Defendant construes *United States v. Neary,* 552 F.2d 1184 (7th Cir.1977) as inferring that a defendant who can demonstrate that the jury failed to follow instructions will be successful in obtaining a new trial. This Court finds this to be an inexact construction of *Neary.* In *Neary,* during the week following the defendant's trial, a juror who had served in the defendant's case appeared as a prospective juror in another matter. On

---

**2.** Rule 606(b) provides: "Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occuring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes."

**3.** *See also United States v. D'Angelo,* 598 F.2d 1002 (5th Cir.1979) which relies on *Davis* in refusing to allow the jury's verdict to be impeached on the basis of a note the jurors sent to the judge during their deliberations.

*voir dire,* she indicated that she had previously served in a "civil case." The defendant argued that this reference to his case as "civil" demonstrated her incapacity to grasp the extent of the government's burden of proof and revealed her incompetence in serving in his case. In rejecting this argument out right, the court commented that the juror's remark did not show that "she failed to follow, or was incapable of following the instructions with respect to reasonable doubt and the like." *Id.* at 1190. The Seventh Circuit did *not* find that a court could inquire into the deliberative process. In fact, the court explicitly reaches the opposite conclusion: "A juror will not be heard to impeach the verdict by testimony concerning his misconception of the court's instructions." *Id.*

Further, the Defendant proffers *United States v. Khoury,* 539 F.2d 441, 443 (5th Cir.1976) for an accurate proposition: the granting of a mistrial for jury misconduct is largely within the discretion of the trial judge, and this discretion extends to the type of investigation required. It is interesting to note that in *Khoury,* the Fifth Circuit found that the trial judge did *not* abuse his discretion when he refused to inquire further into the deliberative process upon learning that two jurors had heard about the death of a government witness on the day after he testified. This Court too elects not to make any such inquiry.

## V

In conclusion, this Court declines to interfere with the freedom of jury deliberation or to upset the stability of verdicts. An inquiry into whether the jury improperly considered the Defendant's failure to testify would undoubtedly defy the time-honored rubric that jurors may not impeach their own verdict. Since the exceptions for extraneous prejudicial information and for outside influences do not embrace the instant case, it is hereby

ORDERED AND ADJUDGED that the Defendant's Motion for a New Trial, or alternatively, for an inquiry into jury misconduct is DENIED.