UNITED STATES of America, Appellee,

v.

**Arthur Edward WILLIAMSON, Appellant.**

No. 76–1507.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 11, 1977.

Decided Dec. 29, 1977.

William B. Long, Jr., Greenville, S. C. (Long, Black & Gaston, Greenville, S. C., on brief), for appellant.

Donald A. Harper, Asst. U. S. Atty., Greenville, S. C. (Thomas E. Lydon, Jr., U. S. Atty., Columbia, S. C., on brief), for appellee.

Before BUTZNER, Circuit Judge, FIELD, Senior Circuit Judge, and HALL, Circuit Judge.

K. K. HALL, Circuit Judge:

Defendant, Arthur Edward Williamson, was indicted for possessing a firearm as a convicted felon, in violation of 18 U.S.C. App. § 1202(a)(1), and following a jury trial, he was convicted. A petition was filed by the United States alleging that Williamson was a "Dangerous Special Offender" under 18 U.S.C. § 3575, and the district court, agreeing, sentenced defendant to eight years in prison instead of the maximum of two years he could have received absent the § 3575 proceedings.

On appeal, defendant challenges both the firearms conviction and the sentencing treatment he was afforded under § 3575. We affirm in both respects.

## I.

### POSSESSION OF A FIREARM BY A CONVICTED FELON

Jerry Clayton Waldrop, Luther Lee Cannon and the defendant were standing outside of Waldrop's trailer[1] when four Greenville County Deputy Sheriffs arrived to perform a search of the trailer pursuant to a search warrant. The defendant and his two companions were ordered into the trailer, and when they turned to enter, the officers noticed a handgun in the hip pocket of Cannon and a bulge in defendant's pocket. Once inside the trailer, the handgun was taken from Cannon, and a revolver was removed from defendant's pocket. Both guns were loaded. A handgun was also removed from Waldrop's possession. All three individuals were placed under arrest.

■ Defendant challenges the firearms conviction, alleging that the handgun introduced at trial was the product of an illegal search and seizure.[2] The facts reveal, and the district court found, that the officers knew, before they went to Waldrop's trailer, that defendant was a convicted felon. When defendant and his companions were ordered to enter the trailer, the handgun was seen in the pocket of Cannon, and a suspicious bulge was noticed in defendant's pocket. Once the officers had actually dis-

covered one gun and had reasonable suspicion that defendant, a convicted felon, also was in possession of a gun, they were not required to ignore the obvious bulge in the defendant's pocket and place themselves in needless peril. Under the circumstances, the removal of the gun from the defendant was proper. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

## II.

### DANGEROUS SPECIAL OFFENDER: 18 U.S.C. § 3575

On the day before the defendant's trial began, the government filed with the court[3] a "Petition for Dangerous Special Offender Status," alleging that the defendant was a dangerous special offender within the meaning of 18 U.S.C. § 3575. Approximately three weeks after the guilty verdict was returned, the court conducted the hearing required by § 3575, and after considering the information supplied from all sources, including both parties, the court sentenced the defendant to eight years in prison. Absent the § 3575 procedure, the defendant was subject to a maximum sentence of two years for possessing a firearm.

This is the first opportunity for this court to construe the provisions of 18 U.S.C. § 3575, and other related statutes. The basic effect of § 3575 on this type of case is to provide for the possible imposition of an increased sentence, of up to twenty-five years, upon a repeat offender.[4] Unlike oth-

---

1. The exact location of the three men in relation to the trailer was disputed at a suppression hearing. We consider this dispute to be of no importance here.

2. A motion to suppress the introduction of the handgun into evidence was denied following a hearing.

3. This petition was presented to Judge Robert Hemphill, who was not the judge who tried the case, and Judge Hemphill ordered the petition sealed "subject to inspection only by the defendant and his counsel until a judgment of guilty or acquittal is entered in the above captioned case." Judge Robert Chapman, the trial judge, was not apprised of the petition until after the trial of the defendant had concluded. This procedure, which was taken in attempted

compliance with 18 U.S.C. § 3575(a), was challenged by the defendant in his brief, but was conceded to be correct during oral argument.

4. There are three ways in which a defendant can qualify for dangerous special offender status under 18 U.S.C. § 3575. First, as here, the defendant may be a repeat offender within the meaning of 18 U.S.C. § 3575(e)(1). Our decision is limited to this application of the statute. Second, the defendant may have committed the instant felony as part of a pattern of conduct which provided a substantial source of his income, and in which he manifested special skill or expertise. 18 U.S.C. § 3575(e)(2). Third, the defendant may have committed the instant felony in furtherance of a conspiracy with three or more other persons to engage in a

er enhancement statutes which deal with repeated crimes in specific areas of the law,[5] the repeat offender provisions of § 3575(e)(1) place no restrictions on the nature of the offenses used to qualify the defendant for treatment under this section, except that they be punishable by death or imprisonment in excess of one year. 18 U.S.C. § 3575(e)(1).

### A. Constitutionality.

■ The defendant contends that § 3575 is unduly vague and creates uncertain standards, violative of due process. Without challenging any specific portion of the statute, defendant relies on *United States v. Duardi*, 384 F.Supp. 874 (W.D.Mo.1974), which did hold that the language of § 3575(f), relating to the proof of dangerousness under that statute, was unconstitutionally vague.[6] Because the defendant did not particularize his challenge to the constitutionality of § 3575, but relied on the reasoning of *Duardi*, we must assume that defendant's constitutional challenge goes to the issue of dangerousness, and we limit our decision to that point. While *Duardi* was affirmed, it was for other reasons. *United States v. Durardi*, 529 F.2d 123 (8th Cir. 1975).

The Seventh Circuit dealt with the vagueness question as it relates to dangerousness in *United States v. Neary*, 552 F.2d 1184 (7th Cir. 1977), where it held:

> pattern of conduct criminal under applicable laws, and the defendant did, or agreed to initiate, organize, plan, finance, direct, manage, or supervise all or part of the conspiracy, or to give or receive a bribe, or to use force as all or part of such conduct. 18 U.S.C. § 3575(e)(3).

**5.** *See, e. g.,* 21 U.S.C. § 841 (enhanced sentence if prior conviction on drug-related offenses); 21 U.S.C. § 849 (dangerous special drug offender). The provisions of 21 U.S.C. § 849 are nearly identical to the provisions of 18 U.S.C. § 3575.

**6.** Section 3575(f) provides:
A defendant is dangerous for purposes of this section if a period of confinement longer than that provided for [the instant] felony is required for the protection of the public from further criminal conduct by the defendant.

**7.** Sentencing judges are not unfamiliar with the problem of determining dangerousness. In his article entitled "Purposes and Philosophy of

Nor do we find that the term dangerous is overly broad or vague for the purposes of sentencing. . . . Factors routinely considered by a sentencing judge are the defendant's past record, the probation officer's report, the nature of the present offense and the defendant's attitude. . . . Likelihood of future criminality and the potential danger to society are determinations implicit in sentencing decisions. The concept of dangerousness as defined in § 3575 is a verbalization of considerations underlying any sentencing decision.

552 F.2d at 1194. *Accord United States v. Bowdach*, 561 F.2d 1160 (5th Cir. 1977); *United States v. Stewart*, 531 F.2d 326, 336–337 (6th Cir. 1976). We agree with the fifth, sixth and seventh circuits that § 3575 is not unconstitutionally vague as it relates to the statutory concept of dangerousness.[7]

### B. Qualification as a Special Offender.

■ Under 18 U.S.C. § 3575(e)(1), a person is a special offender if he

> has previously been convicted in courts of the United States, [or] a State . . . for two or more offenses committed on occasions different from one another and from [the instant] felony and punishable in such courts by death or imprisonment in excess of one year, for one or more of such convictions [he] has been imprisoned prior to the commission of [the instant]

Sentencing," 75 F.R.D. 287, 290 (1976), Judge Walter E. Hoffman, Director of the Federal Judicial Center, recognized that judges often are required to determine what constitutes dangerousness for regular sentencing purposes. *See generally* 18 U.S.C. § 4205(b). Under normal sentencing procedures, the judge has access to many sources, including presentence reports, background information, information on detainers, pending charges and circumstances surrounding prior offenses. When sentencing under § 3575, the judge not only has access to these same resources, but also has the benefit of oral testimony and cross examination. Thus, judges are not unfamiliar with determining what constitutes dangerousness, and the provisions of § 3575 not only present a judge with another situation in which dangerousness must be evaluated, but they provide him more information on which to base his decision.

felony, and less than five years have elapsed between the commission of [the instant] felony and either [his] release, on parole or otherwise, from imprisonment for one such conviction or his commission of the last such previous offense or another offense punishable by death or imprisonment in excess of one year under applicable laws. . . .

To support a finding of special offender in this case, the government alleged in its petition that Williamson

> was convicted in the Court of General Session of Greenville County, South Carolina, in September, 1965 for Housebreaking and Larceny for which he was given probation, and in December, 1972 for Manslaughter for which he was sentenced to four (4) years. The defendant was imprisoned and he was released June 26, 1974.

The order sentencing defendant as a special dangerous offender was entered on March 5, 1976. Defendant does not challenge the use of the 1972 manslaughter conviction as qualifying him for special offender status, which conviction not only counts as one of the needed felonies, but also is the one upon which defendant was incarcerated within the past five years. Defendant does, however, challenge the 1965 housebreaking and larceny conviction as being too remote in time to be employed in the proceeding. Since the statute does not otherwise place a time limit on the convictions which may be considered, the defendant urges that we adopt a ten-year rule, similar to Rule 609(b) of the Federal Rules of Evidence, and exclude from consideration in a § 3575 proceeding any conviction more than ten years old.[8] We refuse to adopt such a rule for two reasons.

First, the statute logically does not include any limitation on the age of a conviction which may be used to qualify the defendant as a special offender. In many cases, a ten-year limitation would be inconsistent with the purposes of § 3575 since the defendant could have served more than ten years imprisonment on his most recent incarceration, and would not be subject to § 3575 treatment merely because he had been confined in prison.

Second, Congress required that "less than five years have elapsed between the commission of [the instant] felony and either the defendant's release, on parole or otherwise, from imprisonment for one such conviction . . . ." 18 U.S.C. § 3575(e)(1). By so providing, Congress expressly recognized the need for a time limitation on the most recent imprisonment, and likewise, it fairly can be concluded that had Congress envisioned a time limitation for all previous felonies, it would have incorporated such into the statute.

Therefore, the government's allegations met the requirements for qualifying defendant as a special offender.

## C. Proof of Dangerousness: Nature of the Proceedings.

■ The defendant next contends that § 3575 is not merely a sentencing proceeding, but creates an additional substantive element of the underlying conviction, and that therefore, all procedural safeguards surrounding a formal trial must be afforded the defendant. We disagree, and, like the sixth circuit, hold:

> [This] statute . . . does not create a new and distinct criminal charge. Rather, the dangerous special offender criteria provide for an increase in the penalty for the offense itself. Under Title X [of the Organized Crime Control Act of 1970], the conduct embraced within the criteria must be factually related to the felony for which sentence is imposed. The Supreme Court has indicated in numerous cases that such facts do not

---

8. Rule 609(b) provides:

> (b) *Time limit.* Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. . . .

relate to a separate criminal charge . .. Title X involves . . . [a] "distinct issue," but it does not constitute a separate charge.

*United States v. Stewart*, 531 F.2d 326, 332 (6th Cir. 1976). *See also United States v. Bowdach, supra.*

Defendant most strenuously complains that his constitutional rights have been violated in two ways: first, by the use of the preponderance of information standard for determining dangerousness under 18 U.S.C. § 3575(b),[9] and second by the admission of evidence which otherwise would be inadmissible during a formal trial.

1. *Proof by a Preponderance of the Information.*

■ The standard of proving dangerousness by a preponderance of the information has been approved by other courts. We agree and hold that such a standard, when employed in a § 3575 sentencing proceeding, is not constitutionally infirm. *United States v. Bowdach, supra; United States v. Neary, supra; United States v. Stewart, supra* at 334.

2. *Information to be Considered by the Sentencing Court.*

■ We further believe that the ordinary evidentiary safeguards which surround a formal criminal trial are not constitutionally mandated in a sentencing proceeding under 18 U.S.C. § 3575 *et. seq. See Williams v. New York*, 337 U.S. 241, 250–52, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). Furthermore, Congress expressed its desire to "maximize sources of sentencing information, [and] to guard against the unnecessary formalization of sentencing procedures" in this proceeding, S.Rep.No.91–617, 91st Cong. 1st Sess. 90 (1969), when it enacted 18 U.S.C. § 3577 which provides:

No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

■ Therefore, we hold that under 18 U.S.C. § 3575, *et seq.*, the sentencing court may, in its broad sentencing discretion, consider all information which has a bearing upon proof of the defendant's dangerousness. The formal rules of evidence used in criminal trials do not limit the sources of information which a court may consider in determining what is a proper sentence for a dangerous special offender. However, since such information may be diverse, a court should give it such weight as it deems appropriate, and pursuant to 18 U.S.C. § 3575(b), the court must "place in the record its findings, including an identification of the information relied upon in making such findings, and its reasons for the sentence imposed." We believe that this procedure provides the defendant not only with the reasons for his sentence, but with the assurance that the appellate courts will be able to review the sentence, and the information and factors relied upon by the district court. Such a procedure is not only constitutionally sound, but exceeds the requirements of formal sentencing in the usual case.

■ In the case at bar, we find no error in the manner in which the district court conducted the § 3575 hearing, or in the evidence it considered. The district court not only limited its findings and reasons to information it considered supportive of the sentence imposed, but it even refused to allow the introduction of certain items of information which it considered either resolved in defendant's favor, or illegally ac-

---

**9.** Section 3575(b) provides, in pertinent part:

If it appears by a *preponderance of the information*, including information submitted during the trial of such felony and the sentencing hearing and so much of the presentence report as the court relies upon, that the defendant is a dangerous special offender, the

court shall sentence the defendant to imprisonment for an appropriate term not to exceed twenty-five years and not disproportionate in severity to the maximum term otherwise authorized by law for [the underlying] felony.

(Emphasis added).

quired.[10] Although the district court may have been wise in not basing its sentence upon this information, we do not believe that error would have resulted from the introduction of such. This evidence, like all other, could be introduced and considered by the court, giving it the weight, if any, it deemed appropriate.

### D. Disproportionate Sentence.

■ Defendant contends that his sentence of eight years was disproportionate in severity to the maximum term otherwise authorized by law, since it was four times the maximum incarceration allowed for the underlying firearms possession conviction. 18 U.S.C. § 3575(b).[11] In *Hart v. Coiner,* 483 F.2d 136 (4th Cir. 1973), this court was presented with the question of whether the West Virginia recidivist statute provided disproportionate and excessive punishment for petitioner Hart. In making our determination, we relied on three factors:

1. The nature of the offense.

2. The legislative purpose behind the punishment.

3. A comparison of the punishment provided in other jurisdictions.

We believe that a similar analysis is useful here, and it leads us to hold that defendant's sentence was not disproportionate.

First, information on which the district court relied showed that the defendant committed several acts of violence including the "totally unnecessary vicious action" of shooting in the head a man whom defendant had beaten into a state of helplessness. This act resulted in the 1972 manslaughter conviction. The testimony at the § 3575 hearing also revealed that many of the offenses committed by the defendant were violent in nature and the result of force, or the threat of force.

Second, the legislative purpose behind the statute is ascertainable from § 3575 itself, where Congress defined a defendant as dangerous "if a period of confinement longer than that provided for such felony is required for the protection of the public from future criminal conduct by the defendant." 18 U.S.C. § 3575(f). Through the enactment of this section, Congress intended to provide the public with protection from repeat offenders by enhancing the incarceration the offender faced for any one crime. We cannot say that the sentence of eight years imposed by the district court is "unnecessary to accomplish the legislative purpose" of § 3575. *See Hart v. Coiner, supra* at 141. Unlike *Hart,* where we held that life imprisonment was totally unnecessary when the defendant had been convicted of writing bad checks, interstate transportation of forged checks, and perjury, the nature of the offenses here do not indicate that the legislative purposes would be abused by an eight-year sentence.

---

**10.** Specifically, the district court refused to hear or consider information about a shooting in Chicago which supposedly was committed with the same gun as the defendant used in the killing which resulted in the 1972 manslaughter conviction. Although a Chicago magistrate found no probable cause and the charges were dismissed, the Government attempted to introduce hearsay testimony concerning the facts surrounding the crime and why the witnesses at the probable cause hearing recanted their testimony against the defendant. As its reasons for refusing to hear this evidence, the court said that "[a] failure to find probable cause should be treated like an acquittal and even in this type proceeding the Court finds it difficult to contemplate circumstances under which the facts underlying such charges could be admissible or properly considered."

The district court also would not listen to tape recordings of conversations between an em-

ployee of the Greenville County Sheriff's Department and Luke Cannon, apparently a close friend and associate of the defendant. The tapes revealed an illegal attempt by Cannon to recover the weapons seized from the defendant, Cannon, and Jerry Waldrop. The defendant's weapon was the one which served as the basis of the underlying conviction here. In refusing to consider these tapes, the court noted that "Luke Cannon was not present at the hearing before the Court, and defendant was not present at the time the tapes were allegedly made. There was no proof to show that the defendant had authorized Cannon to represent him in the matter."

Finally, the district court refused to allow the introduction of information concerning bank robbery charges pending against the defendant.

**11.** *See* note 9 *supra.*

Finally, other jurisdictions provide severer sentences for habitual offenders than does § 3575.[12]

For these reasons, and from a review of the record, and the briefs, and from oral argument, we cannot say that the sentence imposed by the district court is disproportionate in severity to the maximum term otherwise authorized for the underlying felony.

Accordingly, both the conviction of the defendant and the sentence imposed under 18 U.S.C. § 3575 are

*AFFIRMED.*

---

**12.** For a 1973 analysis of several habitual offender statutes, see *Hart v. Coiner, supra* at 141–44.