UNITED STATES of America, Appellee,

v.

Nicholas Anthony MOCCIA,
Defendant, Appellant.

No. 81–1532.

United States Court of Appeals,
First Circuit.

Argued April 9, 1982.
Decided June 16, 1982.

**62**

John A. Macoul, Lawrence, Mass., by appointment of the Court, for appellant.

Helen J. Forsyth, Asst. U. S. Atty., Concord, N. H., with whom W. Stephen Thayer, III, U. S. Atty., Concord, N. H., was on brief, for appellee.

Before CAMPBELL, BOWNES, and BREYER, Circuit Judges.

BREYER, Circuit Judge.

Defendant/appellant Nicholas Moccia was convicted of possessing two drugs—marijuana and diethylpropion—with intent to distribute. 21 U.S.C. §§ 812 (Schedule I(c)(10)), 841; 21 C.F.R. § 1308.14(e)(1) (1981). He was sentenced under the "Dangerous Special Drug Offender" statute, 21 U.S.C. § 849, to two concurrent fifteen-year terms. He attacks his conviction and sentence on several grounds. In our view, both must stand.

1. Defendant's first claim is that the trial court erred in allowing the Government to tell the jury that he had previously been convicted in state court for possession of marijuana. The relevant federal rule of evidence is 404(b), which states,

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

This rule codifies the common law doctrine forbidding the prosecution from asking the jury to infer from the fact that the defendant has committed a bad act in the past, that he has a bad character and therefore is more likely to have committed the bad act now charged. Although this "propensity evidence" is relevant, the risk that a jury will convict for crimes other than those charged—or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment—creates a prejudicial effect that outweighs ordinary relevance. 2 Weinstein's Evidence ¶ 404[04] at 404–26 (1980); Note, *Procedural Protections of the Criminal Defendant—A Reevaluation of the Privilege Against Self-Incrimination and the Rule Excluding Evidence of Propensity to Commit Crimes*, 78 Harv.L.Rev. 426, 436 (1964). Where the evidence has some "special" probative value, however,—where, for example, it is relevant to something other than mere "character" or "propensity,"—it "*may*" be admitted. The trial judge then must weigh the special relevance against the prejudicial risk, taking into account the likely hostile jury reaction that underlies the common law rule. *United States v. Halper*, 590 F.2d 422, 432 (2d Cir. 1978); 2 Weinstein's Evidence §§ 404[08], 404[18]. *See also United States v. Byrd*, 352 F.2d 570, 574–75 (2d Cir. 1965) (Friendly, J.).

In this case there was a "special" factor making the past conviction more than an effort to produce a "bad character/propensity" chain of inference. Evidence was introduced showing that federal agents had found marijuana and diethylpropion buried under some dog food in the freezer room of the farmhouse where defendant lived with his wife (the owner). Bags of marijuana were also found in the barn under a chicken coop. While defendant offered to stipulate that he knew marijuana and diethylpropion were "controlled" substances, and that whatever he did, he did "knowingly" and "intentionally," *cf. United States v. Mohel*, 604 F.2d 748 (2d Cir. 1979), he would not stipulate that he knew the drugs were in the freezer room or under the chicken coop. By introducing the past conviction, the Government thus, in part, sought to have the jury infer that one who lives on a farm with marijuana in the freezer room and under the chicken coop and has a prior possession conviction is more likely to *know* about the presence of marijuana than one who lives on such a farm and does not have a past possession conviction.

Such an inference would not have been difficult to draw. The jury might have thought a past possessor is more likely to associate with those who use and keep and talk freely about nearby marijuana; it might have thought a past possessor is more likely to spot marijuana under a chicken coop; it might have thought a past possessor is less likely to throw away marijuana if he comes across it. None of these inferences—all supporting a conclusion of "knowledge"—depends entirely upon the "bad character/propensity" chain of reasoning. *See United States v. Sinn*, 622 F.2d 415, 416 (9th Cir.), *cert. denied*, 449 U.S. 843, 101 S.Ct. 124, 66 L.Ed.2d 51 (1980). *Cf. United States v. Merryman*, 630 F.2d 780, 786 (10th Cir. 1980). *But see United States v. Hernandez-Miranda*, 601 F.2d 1104, 1108 (9th Cir. 1979). Thus, they escape the absolute bar of the Rule's first sentence.

The question of balancing relevance and risk is more difficult, but we believe that the trial court acted within its discretion. *United States v. Eatherton*, 519 F.2d 603, 611 (1st Cir.), *cert. denied*, 423 U.S. 987, 96 S.Ct. 396, 46 L.Ed.2d 304 (1975); 2 Weinstein's Evidence ¶ 404[18] at 404–110 & n.16. On the one hand, the court refused to allow the Government to do more than simply read the prior charge. It instructed the jury to consider the conviction only for its tendency to show knowledge or intent and to ignore whatever light it shed on character or propensity. And the prior conviction

(for possession of "more than one pound" of marijuana) was not for a shocking or heinous crime likely to inflame the jury.

■ On the other hand, there was so much other evidence of guilt in the case that it is difficult to believe the prior conviction was needed. Drug-related equipment was found in public rooms on the farm. Large amounts of cash were found in the defendant's room. The defendant and his wife sold the farm and fled from New Hampshire one month before they were initially to be tried (four years ago). And, the defendant had made two highly incriminating admissions: the day of the search he told one of the agents that they should have waited a few days to raid the farm as the Mexican crop had not yet been harvested. The next day he told two deputy marshals (in their words) that the Government

> really blew it. I was going to get two tons of marijuana. In fact, I was talking to the guy on the phone when you raided the place.... I really needed the two tons to get out of the hole, ... but after this, ... I'll never hear from the guy again.

In the face of this evidence, the defense presented no witnesses.

While all this evidence lessened the need for introducing the prior conviction, it also lessened the likelihood of any prejudicial effect—to the point where, even were we to find the evidence inadmissible (which we do not), the error would have been harmless. *See United States v. Bosch*, 584 F.2d 1113, 1117–18 (1st Cir. 1978); 2 Weinstein's Evidence ¶ 404[18] at 404–111 & n.19.

■ 2. Defendant complains of the trial judge's instruction that the jury not consider any lesser included offenses "until or unless you have arrived at a reasonable doubt on the offenses charged." Defendant does not complain about the well-established rule that a jury is to consider lesser included offenses only after a determination of "not guilty" is reached on the primary charge. *See* 2 Devitt & Blackmar, Federal Jury Practice and Instructions § 58.15. Rather, he states that this charge

somehow implied that the defendant had the burden of coming forward with evidence that would lead the jury to find a reasonable doubt. He claims the charge implied to the jury that "reasonable doubt" had to be created instead of existing from the outset.

We disagree. At the end of the trial, the judge charged the jury as follows:

> Consider ... whether the government has sustained its burden of proving beyond a reasonable doubt each offense of possession with intent to distribute with which [Moccia] is charged.

> If you find that such burden has been sustained, that is the end of the case as to him. You will have established his guilt as to such offense or offenses. If, however, you find that a reasonable doubt exists as to either or both of such offenses, you must then turn to the issue of whether he is guilty of the lesser included offenses of possession of controlled substances, and here again must consider whether the government has sustained its burden of proof beyond a reasonable doubt as to each of the elements of those offenses. If it has, then he is guilty of the lesser included offense. If it has not, then you must find him not guilty.

The judge then gave the challenged instruction:

> I caution you do not turn to the lesser included offense until or unless you have arrived at a reasonable doubt on the offenses charged, that is, possession with intent to distribute.

Taken as a whole, *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); *United States v. Thomann*, 609 F.2d 560, 565–66 (1st Cir. 1979), this charge certainly seems adequate as to the burden of proof on "reasonable doubt." Moreover, the judge properly charged the jury several different times as to "reasonable doubt" and "presumptions of innocence." We find no violation of "due process" or "fair treatment," *In re Winship*, 397 U.S. 358, 359, 90 S.Ct. 1068, 1070, 25 L.Ed.2d 368 (1970), or any other basis for complaint.

3. Finally, defendant makes three arguments attacking the "enhanced" fifteen-year concurrent sentences he received as a "dangerous special" drug offender under 21 U.S.C. § 849. First, he claims that at his "enhancement" hearing, the trial judge should not have considered hearsay evidence, evidence derived from "illegal" wiretaps, and evidence not specified in the notice that the statute requires the Government to give prior to trial, 21 U.S.C. § 849(a). The short and conclusive answer to these objections is that the Comprehensive Drug Abuse Prevention and Control Act (of which § 849 is a part) specifically states that,

> no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence. . . .

21 U.S.C. § 850. This provision codifies the principle that when setting a sentence, a judge can consider a virtually unrestricted range of information, *see United States v. Grayson*, 438 U.S. 41, 50, 98 S.Ct. 2610, 2615, 57 L.Ed.2d 582 (1978), including hearsay, *United States v. Inendino*, 604 F.2d 458, 463 (7th Cir.), *cert. denied*, 444 U.S. 932, 100 S.Ct. 276, 62 L.Ed.2d 190 (1979); *United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979), *cert. denied*, 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980), other information that might be inadmissible at trial, *United States v. Williamson*, 567 F.2d 610, 615 (4th Cir. 1977), and evidence not specified in a § 849(a) pretrial notice. *See United States v. Ilacqua*, 562 F.2d 399, 403 (6th Cir. 1977), *cert. denied*, 435 U.S. 906, 917, 947, 98 S.Ct. 1453, 1473, 1532, 55 L.Ed.2d 497, 508, 545 (1978). We see no reason to depart from this rule in the case of wiretap evidence where, as here, attacks on that evidence have been raised and rejected in a prior criminal prosecution in state court.

Second, defendant claims the Government failed to show that he is both "special" and "dangerous" by a "preponderance of the information." *See United States v. Sutton*, 415 F.Supp. 1323, 1325–27 (D.D.C.1976); 21 U.S.C. § 849(b). Again, we disagree. In showing that defendant was "special," the Government produced evidence that he was a "professional," *United States v. Sutton*, 415 F.Supp. at 1325, which is to say that his offenses were committed

> as a part of a pattern of dealing in controlled substances which was criminal under applicable laws of any jurisdiction,

> which constituted a substantial source of his income, and

> in which he manifested special skill or expertise; . . .

21 U.S.C. § 849(e)(2). The "pattern" was evidenced by the fact that only a year previously defendant had been found in the same place, with the same "farmhands," and with 740 pounds of marijuana. *State v. Moccia*, 119 N.H. 169, 400 A.2d 44 (1979); 21 U.S.C. § 849(e). That defendant's drug sales provided a "substantial source of his income" was shown by the tax court's decision in *Moccia v. Commissioner*, No. 708–78 (June 4, 1979) and by his 1976 tax return. The decision indicates that defendant's drug profits amounted to several hundred thousand dollars in 1976—far more than the 50 percent of declared income ($30,000) that the statute requires. 21 U.S.C. § 849(e). Defendant argues that the tax court's decision rests upon unlawful wiretap evidence. No policy of the law, however, requires us to go behind that decision to examine its evidentiary basis where the decision itself was used only for sentencing purposes, and where, in any event, defendant's attacks on the wiretap evidence have been heard, and rejected, by the New Hampshire courts. In any event, defendant's claim that the income projections are unreliable because the wiretap lasted only eleven days is frivolous. The projections imply that defendant's drug profits exceeded the requisite $15,000 during just the period of the wiretap itself! Finally, defendant's "special skill" was shown by his prior conviction, his flight before trial, and this same wiretap evidence (which revealed that defendant was in charge of a good-sized operation, and that

he described himself as a "dealer's dealer"). In sum, the trial judge's finding that defendant was "special" was adequately supported by the evidence, which the judge identified in the record as the statute requires. 21 U.S.C. § 849(b).

The statute's special definition of "dangerous" requires that the judge find that

a period of confinement longer than that provided for [the] felonious violation [in question] is required for the protection of the public from further criminal conduct by the defendant.

21 U.S.C. § 849(f). In our view, the judge's finding that defendant was "special" was also adequate to support a finding of "dangerous."

■ Third, defendant claims that his sentence is disproportionately severe. 21 U.S.C. § 849(b). We note that there are certain mitigating factors in defendant's background. Nonetheless, the fifteen-year sentence is considerably less than the twenty-five years the Government sought. It is seven years more than the sentence he might have been given were he not a "special" and "dangerous" offender. *See* 21 U.S.C. § 841(b)(1)(B) and (b)(2). Yet, it is still only three years more than the sentence that might have been imposed had defendant's earlier drug conviction been under federal rather than state law. *See* 21 U.S.C. § 841(b)(1)(B). The evidence, suggesting that he was a serious professional dealer, who repeated his crimes, and who fled the jurisdiction when caught, convinces us that this is not a case for interfering with the sentence.

In sum, we reject defendant's arguments, and the conviction and sentence are

*Affirmed.*