**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Nathaniel PLEASANT, Defendant-Appellant.**

**No. 83–7015.**

United States Court of Appeals, Eleventh Circuit.

April 23, 1984.

---

L. Dan Tuberville, Birmingham, Ala., for defendant-appellant.

Frank W. Donaldson, U.S. Atty., Robert J. McLean, John E. Ott, Asst. U.S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before TJOFLAT and FAY, Circuit Judges, and WISDOM *, Senior Circuit Judge.

TJOFLAT, Circuit Judge:

In this appeal we are called upon to review a sentence imposed under the dangerous special offender statute, 18 U.S.C. § 3575 (1982). The appellant, Nathaniel Pleasant, the defendant below, claims that the district court misapplied the statute and sentenced him to a term disproportionate to what he could have received for the offense to which he had pled guilty, possession of an unregistered firearm. He also claims, alternatively, that the statute should not have been invoked in his case for three reasons: (1) the district court applied the statute to him when it had not applied the statute to others similarly situated, violating his fifth amendment equal protection rights; (2) the prosecutor had not given him an adequate chance to accept a plea bargain, violating his fifth amendment rights to due process of the law; and (3) the prosecutor requested the court to apply the dangerous special offender statute in retaliation for Pleasant's failure to accept the plea bargain, violating Pleasant's fifth amendment due process rights. We find these claims to be without merit and affirm.

---

* Honorable John Minor Wisdom, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. "Firearm" is defined in 26 U.S.C. § 5845(a)(2) (1982) as "a weapon made from a shotgun

## I.

On March 2, 1982, two police officers in downtown Birmingham, Alabama, on routine patrol were stopped by three women who told them that they had seen a man with a shotgun who was going to rob someone. The officers saw a man carrying a bulky object in a nearby park. As they approached, the man threw down a coat he had been carrying, revealing a shotgun underneath it. The man fled, and the police followed. During the chase, the man dropped the gun in a vacant lot. The two officers caught up with him, subdued him after a struggle, and arrested him. They later retrieved the gun. The shotgun, loaded with a .12 gauge live shell, had a barrel length of 14½ inches. The police identified the man as Nathaniel Pleasant, and found no firearms registered to him in the National Firearm Registration and Transfer Records.

On May 6, 1982, Pleasant was indicted by a grand jury and charged with possession of a firearm not registered to him in the National Firearm Registration and Transfer Record, a violation of 26 U.S.C. § 5861(d) (1982).¹ The charge carried a maximum penalty of ten years and/or a $10,000 fine, 26 U.S.C. § 5871 (1982). On June 2, the prosecutor contacted the Department of Justice to receive approval to file a petition with the court that Pleasant be considered a dangerous special offender under 18 U.S.C. § 3575(e)(1) (1982).² This statute allows a judge to impose a sentence of up to twenty-five years imprisonment. On June 4, the prosecutor met with Pleasant's attorney to discuss a possible disposition of the case. The prosecutor told counsel that he would consider recommending a ten-year sentence if Pleasant would plead guilty. He also informed counsel that if Pleasant did not enter a guilty plea, the

[with] a barrel ... of less than 18 inches in length."

2. Justice Department regulations required a prosecutor to obtain the Department's approval before proceeding under § 3575.

government would petition the court to treat Pleasant as a dangerous special offender. Counsel communicated the offer to Pleasant, who indicated that he would accept only a five-year recommendation. On June 7, at a pretrial conference, counsel told the prosecutor that appellant would accept an offer of a five-year recommendation. The prosecutor rejected that idea. The case was set for trial, and the prosecutor filed the petition seeking dangerous special offender status for Pleasant.

On June 15, counsel suggested to the court that Pleasant was incompetent to stand trial and moved for a psychiatric examination. A local psychiatrist examined Pleasant. The resulting report was inconclusive, so the court ordered that Pleasant be transferred to the Bureau of Prisons psychiatric facility at Butner, North Carolina, for further observation. While he was under observation, Pleasant's counsel withdrew from the case and the court appointed a new attorney, L. Dan Turberville, to represent him.

On October 5, the psychiatrists at Butner concluded that Pleasant was competent to . stand trial and returned him for trial. On November 1, he pled guilty to the firearm offense charged, and the judge scheduled a nonjury hearing on the government's dangerous special offender petition as required by section 3575. Both sides presented evidence at the hearing. Pleasant also presented the equal protection and due process claims we have mentioned *supra*. At the close of the evidence, the court made extensive findings of fact. It concluded that Pleasant fit the statutory criteria for a dangerous special offender, and that the statute's application to him would not violate his due process or equal protection rights. After finding the facts, the court sentenced appellant to a twenty-one year prison term.

## II.

### A.

18 U.S.C. § 3575(b) (1982) states that on petition from a prosecutor and after the defendant in the case has been determined guilty, a judge may hold a hearing to determine whether the defendant is a dangerous special offender. If so, the judge "shall sentence the defendant to imprisonment for an appropriate term not to exceed twenty-five years *and not disproportionate in severity to the maximum term otherwise authorized by law for such felony.*" *Id.* at § 3575(c) (emphasis added).[3] Pleasant

---

**3.** The text of 18 U.S.C. § 3575 (1982) reads, in relevant part:

§ **3575. Increased sentence for dangerous special offenders**

(a) Whenever an attorney charged with the prosecution of a defendant in a court of the United States for an alleged felony committed when the defendant was over the age of twenty-one years has reason to believe that the defendant is a dangerous special offender such attorney, a reasonable time before trial or acceptance by the court of a plea of guilty or nolo contendere, may sign and file with the court, and may amend, a notice (1) specifying that the defendant is a dangerous special offender who upon conviction for such felony is subject to the imposition of a sentence under subsection (b) of this section, and (2) setting out with particularity the reasons why such attorney believes the defendant to be a dangerous special offender....

(b) Upon any plea of guilty or nolo contendere or verdict or finding of guilty of the defendant of such felony, a hearing shall be held, before sentence is imposed, by the court sitting without a jury.... If it appears by a preponderance of the information, including information submitted during the trial of such felony and the sentencing hearing and so much of the presentence report as the court relies upon, that the defendant is a dangerous special offender, the court shall sentence the defendant to imprisonment for an appropriate term not to exceed twenty-five years and not disproportionate in severity to the maximum term otherwise authorized by law for such felony.

\* \* \* \* \* \*

(e) A defendant is a special offender for purposes of this section if—

(1) the defendant has previously been convicted ... for two or more offenses committed on occasions different from one another and from [the underlying federal offense] and punishable in such courts by death or imprisonment in excess of one year, for one or more of such convictions the defendant has been imprisoned prior to the commission of [the underlying offense] and less than five years have elapsed between the commission of such felony and either the defendant's release, on parole or otherwise, from imprisonment for

does not question the court's finding that he is a "special offender" as defined in section 3575(e)(1), and that he is "dangerous" as defined in section 3575(f), and therefore that "a period of confinement larger than that provided for [possession of an unregistered firearm] is required for the protection of the public." He contends only that his twenty-one year sentence is disproportionate in severity to the ten-year maximum term authorized for the 26 U.S.C. § 5861(d) (1982) possession charge.[4]

> one such conviction or his commission of the last such previous offense or another offense punishable by death or imprisonment in excess of one year . . . .
>
>   *  *  *  *  *  *
>
>  (f) A defendant is dangerous for purposes of this section if a period of confinement longer than that provided for [the underlying offense] is required for the protection of the public from further criminal conduct by the defendant.

4. 18 U.S.C. § 3576 (1982) gives us express jurisdiction to review this claim. § 3576 provides in relevant part:

>  With respect to the imposition . . . of a sentence after proceedings under section 3575 . . ., a review of the sentence on the record of the sentencing court may be taken by the defendant or the United States to a court of appeals . . . . Review of the sentence shall include review of whether the procedure employed was lawful, the findings made were clearly erroneous, or the sentencing court's discretion was abused. The court of appeals on review of the sentence may, after considering the record, including the entire presentence report, information submitted during the trial . . . and the sentencing hearing, and the findings and reasons of the sentencing court, affirm the sentence, impose or direct the imposition of any sentence which the sentencing court could originally have imposed, or remand for further sentencing proceedings and imposition of sentence, except that a sentence may be made more severe only on review of the sentence taken by the United States and after hearing.

5. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

6. In *Williamson,* the Fourth Circuit upheld an eight-year sentence under the special dangerous offender statute where the maximum sentence for the underlying crime was two years. The appellate court applied a fairly elaborate analysis in finding the sentence to be proportional;

While we have upheld section 3575 as constitutional, *see United States v. Bowdach,* 561 F.2d 1160 (5th Cir.1977),[5] we have not yet addressed the problem of determining whether a sentence under section 3575 is disproportionate to the sentence for the underlying felony of which the defendant is convicted. The Third and Fourth Circuits have directly addressed this problem. *See United States v. Felder,* 706 F.2d 135 (3d Cir.1983); *United States v. Williamson,* 567 F.2d 610 (4th Cir.1977).[6]

the court analogized § 3575 to a state recidivist statute as follows and applied the same test it had to that statute. The court looked at: (1) "the nature of the offense" (by "the offense," apparently meaning the prior felonies constituting dangerousness); (2) "the legislative purpose behind the punishment" (the punishment being the sentence enhancement); and (3) "a comparison of the punishment provided in other jurisdictions" (such as state recidivist statutes). In analyzing whether the sentence enhancement was "proportional," the court did not mention the underlying felony for which the defendant had been sentenced, but focused solely on his prior offenses and the legislative purpose in providing sentence enhancement. 567 F.2d at 616.

In contrast, the Third Circuit in *Felder* focused first on the underlying felony, and second on the reasons for augmenting the sentence. The court indicated that to fulfill the proportionality requirement, the sentencing judge must:

> keep sight of the fact that the maximum sentence for the underlying felony is the only legitimate base for a proportional section 3575 sentence. In that way the underlying felony, which is the reason that the defendant is in court in the first place, will retain its central place in sentencing. The extent to which that sentence should be augmented will depend on a number of factors, such as the nature and seriousness of the conduct which led to the defendant's characterization as a dangerous special offender in the first place. . . . [T]he number, type and timing of the prior offenses will be relevant, as well as "information about the defendant, his crime, and the context in which it was committed."

706 F.2d at 140, citing S.Rep. No. 617, 91st Cong., 1st Sess. 91 (1969).

The *Felder* court remanded the case to the district court for resentencing because the sentencing judge had not indicated in any way why the 12-year sentence he imposed was proportional to the two-year maximum sentence for the underlying offense. The court noted that the judge had not even shown whether he had

The Sixth and Seventh Circuits have discussed proportionality but have not been required to resolve the merits of a claim that the sentence is disproportionate. *See United States v. Stewart*, 531 F.2d 326 (6th Cir.), *cert. denied* 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 376 (1976); *United States v. Neary*, 552 F.2d 1184 (7th Cir.), *cert. denied* 434 U.S. 864, 98 S.Ct. 197, 54 L.Ed.2d 139 (1977). The First Circuit has construed a similar proportionality requirement in a sister statute (21 U.S.C. § 849 (1982) sentencing for special dangerous drug offenders) in *United States v. Moccia*, 681 F.2d 61, 66 (1st Cir.1982).[7]

Both the theory of recidivist statutes, such as section 3575, and the legislative history of the section help us to evaluate what the proportionality requirement means in this case. Recidivist statutes have passed double jeopardy scrutiny because they work on the theory that "the increased punishment does not represent punishment for the earlier crimes, but rather the fact of the earlier crimes aggravates the commission of the latest crime warranting imposition of the longer sentence." *Bowdach*, 561 F.2d at 1176. In other words, the underlying offense becomes a greater crime, worthy of greater punishment, when a recidivist commits it. Section 3575, then, gives the sentencing judge more latitude accurately to reflect in his sentence the higher risk to society involved in the crime when a recidivist commits it, and the according enhanced need for specific deterrence of the offender, general deterrence of like offenders, and retribution for the crime.

The legislative history allows some insight into how the proportionality provision modifies this structure. The original bill providing for sentence enhancement did not have any proportionality requirement, al-

lowing the judge, after hearing, to sentence the dangerous offender to up to thirty years imprisonment regardless of his underlying crime. *See* S.Rep. No. 617, 91st Cong., 1st Sess. 29 (1969). The American Bar Association recommended that a proportionality requirement along the lines of its Standards Relating to Sentencing Alternatives and Procedures §§ 3.1(c), 3.3(a) (Sentencing Standards) (Approved Draft 1968) be inserted. The ABA, in the Sentencing Standards, had included a proportionality determination for the following reasons:

> It may well be that one who has committed [a relatively minor offense] will pose such a public danger that a [severe] term ... is called for. But he would have posed just as much of a danger before he committed the offense as he does after. A sentence of this magnitude no longer bears any reasonable relationship to the event which triggered its possibility. The major thrust of the proceeding has shifted from the offense to the status of the offender. A proceeding which can result in such a long sentence ought to assume the burden of depending initially and primarily on the criteria which justify it, rather than employ[ing] the vehicle of a relatively minor felony to approach the same end indirectly. Such an indirect approach gives rise to all manner of difficulties, ranging from procedural questions of confrontation of witnesses and proof beyond a reasonable doubt to the punishment of status and the moral, if not legal, questions of cruel and unusual punishment.

*Id.* at § 3.1 comment d, cited in *Felder* at 138–39. Congress adopted the ABA recommendation, *see* H.R.Rep. No. 1549, 91st Cong., 2d Sess. 61, 97, *reprinted in* 1970 U.S.Code Cong. & Ad.News 4007, 4037,

considered the proportionality requirement of § 3575 at all.

7. In *Moccia*, the court found a 15-year sentence to be proportionate where the underlying felony carried an eight-year maximum sentence. The court looked briefly at "the evidence" suggesting repeated crime, *id.* at 66, and compared the sentence briefly to other sentences Moccia could

have received. In *Stewart*, the district court believing the statute was unconstitutional sentenced the defendant to the maximum term for the underlying offense. In *Neary*, the defendant was sentenced to one day more than the maximum term for the underlying offense, and the court merely noted no proportionality problem.

4066, and included the requirement that the defendant's sentence as a dangerous offender be proportional to the maximum sentence he could have received without special dangerous offender status.

■ Congress' express inclusion of a proportionality requirement indicates that the section 3575 sentence must have some relation to the underlying crime. However, neither the legislative history nor the theory of the statute would support our choosing a specific narrow ratio that must exist between the sentence with and without the section 3575 enhancement. Rather, both the language of the statute ("proportional" as opposed to a specific ratio) and the nature of the concerns expressed in the ABA Standards (that "relatively minor" offenses might result in imposition of the maximum sentence) support a determination that the proportionality requirement is a fairly broad one. It gives the sentencing judge a sliding scale of punishments to impose to reflect more accurately the gravity of the offense. As long as the nature and circumstances of the offense, including the offender's prior record, show the offense to be grave enough so that the enhanced penalty is not clearly out of line as a punishment for the offense, we will uphold the sentencing judge's determination of the appropriate sentence.

■ In this case, Pleasant committed a crime with a usual maximum punishment of ten years. The sentence imposed is slightly over twice that. The crime involved a loaded, dangerous, illegal weapon. Pleasant physically resisted arrest; two men were required to subdue him. His previous infractions included a manslaughter conviction for stabbing a man in prison, and a second degree murder conviction where he beat a man to death with a shovel. In addition, Pleasant, now thirty-one, has been out of jail only briefly since he was nineteen, the last time shortly before he committed the offense for which he was being sentenced in this case. We agree that the enhanced sentence is a strong remedy; however, Pleasant's past conduct shows such disregard for the law that the firearm violation, when committed by him, becomes a grave crime indeed. We find the sentence enhancement to be within the bounds of proportionality contemplated by section 3575.

## B.

Pleasant next argues that he was denied equal protection of the law on the ground that the dangerous special offender statute is rarely applied in the Northern District of Alabama where he was tried. He submitted at the special dangerous offender petition hearing the criminal records of several individuals tried in the Northern District as shown in the presentence reports for their most recent conviction. He alleged that these individuals were "similarly situated," i.e., they met the prerequisite for being special dangerous offenders, yet they were not so prosecuted.

■ To prevail on a selective prosecution claim, a defendant must make a prima facie showing that he has been singled out for prosecution while others similarly situated and committing the same acts have not been prosecuted. *United States v. Lichtenstein*, 610 F.2d 1272, 1281 (5th Cir.), *cert. denied sub nom. Bella v. United States*, 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 856 (1980). After making this prima facie showing, he must show that the government prosecuted him invidiously or in bad faith. *Id.* If the court finds that the defendant has failed to make a prima facie case on the first element, a court need not address the second. *United States v. Kahl*, 583 F.2d 1351, 1354 n. 3 (5th Cir. 1978). In this case, Pleasant has failed to show sufficient evidence that others similarly situated have not been prosecuted.

The trial judge, after hearing the evidence Pleasant put on to support his equal protection claim, made the following finding:

[T]here is no basis on the evidence that is actually before the Court by way of the various exhibits presented that would support a determination that any of the persons sought to be compared with the defendant were ... a, eligible to be con-

sidered as a special offender, and b, would be viewed as dangerous. The one possible exception to that is Willie Heard and the Court just simply does not have sufficient information to make a valid comparison with regard to Willie Heard at this time.[8]

These findings are clearly supported by the evidence. Moreover, the evidence showed that another defendant had been sentenced as a special dangerous offender in the Northern District of Alabama two months before the prosecutor filed the petition to prosecute Pleasant under the statute. We hold that appellant has not presented a prima facie case that others similarly situated were generally not prosecuted under section 3575.

### C.

Finally, Pleasant argues that his due process rights were violated in two ways: first, the government did not give him adequate opportunity to accept a plea bargain it offered; and second, the prosecutor vindictively decided to file the petition for special dangerous offender treatment because he was angered by appellant's rejection of the offered plea bargain.

### 1.

Pleasant bases the argument that he did not have an adequate opportunity to accept or reject the proffered plea bargain on his mental state. After he rejected the plea bargain, his counsel filed a request for psychiatric evaluation, resulting in his spending three months under psychiatric observation. Upon his return from the institution for trial, the plea bargain was no longer open to him. He alleges that because he may have had psychological problems when he rejected the original plea bargain, the prosecutor's failure to keep the offer open "denied [him] the fundamental right of knowingly and intelligently accepting" the government's offer.

Pleasant cites *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), in support of his claim. In *Bordenkircher,* as here, the prosecutor let the defendant know when he offered a plea bargain that he intended to have the defendant punished as a recidivist if the case went further. In these facts, *Bordenkircher* parallels Pleasant's case. However, we find no language in *Bordenkircher* or anywhere else to indicate that a prosecutor has any duty to keep a plea bargain open for any length of time.

The *Bordenkircher* Court does say that "there is no such element of punishment or retaliation as long as the accused is free to accept or reject the prosecution's offer." *Id.* at 363, 98 S.Ct. at 668. In context, this passage refers to whether the prosecutor had threatened to "punish" the defendant by seeking a second indictment for recidivism against him. The question was whether the defendant had been forced into a decision on the plea bargain by this "threat" of additional punishment. The Court in the quoted sentence was indicating that the defendant was "free" to make up his mind in the sense that he was not coerced or threatened into making his choice.

■ We do not read this statement as imposing a duty on a prosecutor either to plea bargain at all or to keep a plea bargain offer, once made, open. A defendant has no right to engage in plea bargaining in the first place. The offer, once made, is still in the discretion of the prosecutor. Like any offeror, he can withdraw his offer at any time, unless, perhaps, the defendant has relied on the offer and the prosecutor should be estopped from withdrawing it. Here we see absolutely no reliance by Pleasant on the prosecutor's offer.

■ Pleasant's mental capacity at the time he rejected the offer is unimportant. If the offer is *accepted,* we must evaluate whether the defendant has made a valid

---

8. We note that the information Pleasant provided with respect to Willie Heard showed that he "was tried in Federal Court" for an unnamed offense in 1977. The presentence report in that case showed, inter alia, two other offenses in 1977, to which Heard pled guilty and was sentenced to two concurrent 30-year terms.

guilty plea, that is, a knowing and voluntary one. This further scrutiny, however, is required because by pleading guilty the defendant is giving up a number of important constitutional rights. In rejecting a plea bargain, the defendant gives up nothing to which he has a right; due process does not require us to screen his capacity to reject a plea bargain offer.

**2.**

■ Pleasant also argues that the prosecutor vindictively petitioned for the special dangerous offender statute to be applied. The record does not support his claim. The evidence at the hearing on the petition showed that the prosecutor sought approval from the Justice Department to file the petition on June 2, 1982. On June 4, he made an offer to recommend a ten-year sentence to defense counsel and told him of his intention to apply the special dangerous offender statute.[9] Defense counsel communicated the offer to his client, and returned with a counteroffer of 5 years. The prosecutor rejected the counteroffer.

This case involved precisely the same facts as *Bordenkircher;* the Court found that the prosecutor's actions did not show vindictiveness. The Court noted:

> While the prosecutor did not actually obtain the recidivist indictment until after the plea conferences had ended, his intention to do so was clearly expressed at the outset of the plea negotiations. Hayes was thus fully informed of the true terms of the offer when he made his decision to plead not guilty.... As a practical matter, in short, this case would be no different if the grand jury had indicted Hayes as a recidivist from the outset, and the prosecutor had offered to drop that charge as part of the plea bargain.

*Id.* at 360–61, 98 S.Ct. at 666. We find no support for Pleasant's claim that prosecu-

9. If the prosecutor had not impliedly made the special dangerous offender prosecution part of the "offer," it would not have been a bargain—

torial vindictiveness violated his due process rights.

AFFIRMED.

ten years was the maximum term for which defendant would be eligible.