COWEN, Circuit Judge,
concurring in part and dissenting in part.
I fully join in the Court’s well-reasoned determination that no error was committed with respect to the proffered medical records evidence as well as the racially-charged statement made by Donovan. Nevertheless, I disagree with its determination that the admission of highly prejudicial character and prior bad acts evidence constituted harmless error. While I therefore concur in sections I and III of the Court’s opinion, I respectfully dissent with respect to section II.
Initially, the majority indicates that the testimony regarding Laurent’s character as a good father was likely admitted in error because such testimony evidently served no proper evidentiary purpose. As the Appellate Division appropriately noted, “[njothing concerning Laurent’s abilities as a father fits into a chain of logical inferences to make Donovan’s guilt more or less likely.” (AD 15.) Turning to the more significant prior bad acts evidence, the majority refrains from deciding whether such evidence was erroneously admitted on account of its subsequent finding of harmless error. However, the Appellate Division was clearly correct to find that this evidence was in fact inadmissible.
Federal Rule of Evidence 404(b) provides that evidence of “other crimes, wrongs, or acts” is not admissible “to prove the character of a person in order to show action in conformity therewith.” On the other hand, this rule does allow such evidence if it tends to show “motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.” Id. We generally follow a mul-ti-prong test to determine whether Rule 404(b) has been violated:
To satisfy Rule 404(b), evidence of other acts must (1) have a proper evi-dentiary purpose, (2) be relevant under Rule 402, (3) satisfy Rule 403 (ie., not be substantially more prejudicial than probative), and (4) be accompanied by a limiting instruction, when requested pursuant to Federal Rule of Evidence 105 that instructs the jury not to use the evidence for an improper purpose. “Other acts” evidence satisfies the first two requirements if it is “probative of a material issue other than character.” In other words, there must be an articula-ble chain of inferences, “ ‘no link of which may be the inference that the defendant has the propensity to commit the crime charged,’ ” connecting the evidence to a material fact.
United States v. Cross, 308 F.3d 308, 320-21 (3d Cir.2002) (footnotes and citations omitted). In this appeal, we are confronted with testimony about two prior incidents where Donovan threatened Laurent with a knife. The majority, while acknowledging that this evidence could conceivably have been used by the jury to make a *211 prohibited propensity inference in violation of the trial court’s instructions, observes that the jury could also have found that the prior incidents “showed, among other things, motive, intent, plan and absence of mistake.” I, however, have no hesitation in concluding that this evidence did not satisfy the proper evidentiary purpose and relevancy requirements stated above.
The Appellate Division expressly found that “[njeither incident had any relevance in Donovan’s trial other than showing her general propensity to commit such acts.” (AD 16 (citation omitted).) In addition to pointing to the trial court’s limiting instructions, the government offers several purported non-propensity justifications for its evidence. It therefore claims that one of the incidents showed that Donovan knew how easily Laurent could disarm her in an open frontal attack (and she accordingly attacked him from behind in order to commit the murder). Similarly, the other incident allegedly tended to show deliberation and premeditation because Donovan grabbed the knife in anger and then was still able to change her mind before actually using the weapon. But the government ultimately draws very tenuous connections between the two prior incidents and this first degree murder case. Far from claiming, for instance, that she killed the victim in the heat of passion, the whole gist of Donovan’s defense was that another person actually committed the murder (and that she fought with the real murderer himself).
In the end, there appears to be a single relevant yet impermissible purpose for the evidence at issue, namely, to show Donovan’s character and her propensity to commit acts of violence, especially against the victim. The government’s own motion in limine filed with the trial court actually stated that the proffered testimony “will show that the defendant has exhibited violent and abusive behavior towards other[s] and the victim.” (AD46 (emphasis added).) In other words, the evidence clearly tended to show, in the apt words of the majority, that “once a dangerous knife-wielder, always a dangerous knife-wielder.”
Accordingly, the Appellate Division was correct to find that it was wrong to admit evidence of the victim’s good character as well as of the accused’s own past criminal misconduct. However, the Appellate Division then incorrectly found that such evi-dentiary errors were harmless. Initially, it is significant that Appellate Division stated and then purported to apply the incorrect legal standard here. It stated, inter alia, that “[wjhere there was sufficient evidence to support a conviction without the error, then the error was harmless and no new trial is necessary.” (AD17 (citing Yohn v. Love, 76 F.3d 508, 523 (3d Cir.1996).)) In the Yohn decision cited by the Appellate Division, we specifically observed that:
The crucial inquiry is the impact of the error on the minds of the jurors in the total setting. It is thus inappropriate to ask whether there was sufficient evidence to support the result, apart from the phase of the trial affected by the error. The correct inquiry is whether the error had a substantial influence on the verdict despite sufficient evidence to support the result apart from the error.
Yohn, 76 F.3d at 523 (emphasis added) (citing Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).
The majority in the current appeal agrees with Donovan that the harmlessness analysis does not focus on the distinct question of whether there was sufficient evidence, notwithstanding the error, to support the verdict. Purporting to apply the proper approach, it finds that any er *212 ror in admitting prior bad acts evidence had no substantial effect on the verdict because the evidence of Donovan’s guilt was overwhelming, the prior bad acts evidence did not go to the key question posed to the jury, and the trial court’s detailed jury instructions limited any prejudice resulting from the admission of this evidence. I agree that the government presented a great deal of evidence indicating that Donovan was guilty of first degree murder. It is also true that the trial court repeatedly instructed the jury as to the purposes for which it could use the prior bad act evidence. Nevertheless, “[a]n evi-dentiary error is harmless only if it is highly probable that the improperly admitted evidence did not contribute to the jury’s judgment of conviction.” United States v. Sallins, 993 F.2d 344, 348 (3d Cir.1993) (emphasis added) (citing Gov’t of V.I. v. Toto, 529 F.2d 278, 284 (3d Cir.1976)). I find that this rigorous standard has not been met.
On the contrary, it appears highly likely that the prejudicial evidence of Donovan own prior criminal misconduct played an important part in the ultimate outcome of her first degree murder trial. In fact, Rule 404(b) actually rests on well-established concerns relevant to the current harmless error analysis. Such prior bad acts evidence “is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge.” Michelson v. United States, 335 U.S. 469, 476, 69 S.Ct. 213, 93 L.Ed. 168 (1948). While such evidence may in fact be highly relevant, it is generally barred because of the “ ‘risk that a jury will convict for crimes other than those charged — or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment.’ ” Old Chief v. United States, 519 U.S. 172, 181, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) (quoting United States v. Moccia, 681 F.2d 61, 63 (1st Cir.1982)). In fact, the majority expressly recognizes that the prior bad acts evidence was “ancillary” to the key question at the trial, namely, “whether Laurent was killed in the manner and at the time claimed by Donovan or whether he died much earlier and Donovan concocted a cover story to disguise her commission of the crime.” But, in addition to hearing that the victim was a good father, the jury also heard testimony depicting Donovan as a violent and jealous person who had on two previous occasions threatened Laurent with a knife and, on one of these occasions, unsuccessfully attacked him. Under the circumstances, the jurors certainly could have been led to decide this case based on this “ancillary” but highly prejudicial and inadmissible evidence purporting to show the defendant in a murder case as a dangerous knife-wielder.
For the foregoing reasons, I would reverse the Appellate Division’s ruling affirming the conviction and remand this matter for a new trial.